IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

WILLIAM BURNS,

    Plaintiff,

V.                              CIVIL ACTION NO. 3:04-0501

JOANNE BARNHART,
Commissioner of Social Security,

    Defendant.

**<u>FINDINGS AND RECOMMENDATION</u>**

In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for supplemental security income based on disability prior to February 1, 2000. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed his application on July 29, 1997, alleging disability as a consequence of "slipped disc, nerve problems, depression, lung problems, thyroid problems.". On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed an action seeking review of the Commissioner's decision.[1] The Court, perceiving deficiencies in the administrative proceedings, remanded the case to the Commissioner. Following a supplemental hearing, an

---

[1] See, Civil Action No. 3:00-0016.

administrative law judge found plaintiff disabled as of February 1, 2000, but not prior thereto, in a decision which became final when the Appeals Council denied a request for review. Plaintiff then filed this action seeking review of the decision.

At the time of the most recent administrative decision, plaintiff was fifty-one years of age and had obtained a ninth grade education and GED. His past relevant employment experience consisted of work as a laborer in a sawmill. In his decision, the administrative law judge determined that plaintiff suffers from "back and neck pain, lung[] [problems], nerves, loss of high frequency hearing and borderline intellectual functioning," impairments he considered severe. Though concluding that plaintiff was unable to perform his past work,[2] the administrative law judge determined that he retained the residual functional capacity for a limited range of light level work. On the basis of this finding and relying on Rule 202.17 of the medical-vocational guidelines[3] and the testimony of a vocational expert, the administrative law judge found him not disabled prior to February 1, 2000.

As noted, the administrative law judge's decision in this case was partially favorable to plaintiff as he found him disabled beginning February 1, 2000, which coincides with a state agency's finding of disability based on a new application for supplemental security income filed in February of 2000. Although the documents relative to the new application and award of benefits are not contained in the record, the administrative law judge noted that the allowance was "on grounds of mental impairment."

---

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

The medical evidence during the relevant period reflects that plaintiff was treated at the Lincoln Primary Care Center for cervical and lumbar spine pain, chronic obstructive pulmonary disease with several episodes of bronchitis and gastroesophageal reflux disease. Plaintiff was also treated at the Prestera Center where, at some point, he was prescribed medication for psychotic symptoms which was effective in eliminating those symptoms. Reports from March 20, 1997 through August 5, 1999, reflect plaintiff's sleep was generally good; his affect and mood were appropriate; side effects from medication were not present; and, the types and dosages of medications prescribed remained relatively stable, with the exception that an antidepressant was added in September 1997.

A consultative evaluation by Robert Burrell, M.A., Ed.S., on September 22, 1997, resulted in a diagnosis of schizo-affective disorder, depressive type, and borderline intellectual functioning.[4] This examiner listed findings of a depressed and anxious mood, flat affect, below average judgement, poor insight, below average recent and remote memory and poor concentration. A state agency psychologist assessed plaintiff's mental residual functional capacity on October 6, 1997, finding he would have moderately limited abilities to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with others without being distracted by them and complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace. This evaluator also concluded that plaintiff could perform routine tasks in a low pressure

---

[4] Psychological testing conducted during a consultative evaluation in March of 1995 produced I.Q. scores in the borderline range. Psychological testing was not conducted in any of the later evaluations.

setting with usual supervision. A second state agency psychologist affirmed these findings on December 11, 1997.

Following an August 5, 1999 evaluation, plaintiff's psychiatrist at Prestera, Dr. Khan, completed a form for the West Virginia Department of Human Services in which he noted a diagnosis of psychotic disorder, NOS, and opined plaintiff was unable to maintain employment due to his mental health. Treatment notes from this physician covering the period September 30, 1999 through March 1, 2001, document few complaints and no medication side effects. The Commissioner arranged for another consultative examination with psychiatrist Elma Bernardo on May 11, 2001, about fifteen months after his disability date. This examiner observed an anxious mood, flat affect, satisfactory attention span and poor concentration and diagnosed a cognitive disorder, NOS. She also felt chronic, undifferentiated schizophrenia should be ruled out. Dr. Bernardo completed a mental residual functional capacity assessment wherein she found plaintiff had a "poor" (seriously limited but not precluded) ability to understand, remember and carry out detailed and complex instructions; relate predictably in social situations; follow work rules; use judgment; deal with work stresses; and, function independently.

The administrative law judge found plaintiff physically capable of a limited range of light level work, a finding which plaintiff does not appear to seriously dispute. In terms of mental limitations, he concluded that plaintiff had the moderate limitations found by the state agency medical experts in October and December 1997. He added that plaintiff could perform routine tasks in a low pressure setting with usual supervision, as also found by the state agency psychologists. After making these residual functional capacity findings, the administrative law judge concluded,

on the basis of vocational expert testimony, that plaintiff was capable of significant numbers of light and sedentary jobs.

Noting that plaintiff's new application of February 8, 2000, was granted by the state agency and that disability was found to commence as of February 1, 2000, based on mental impairments, the administrative law judge concluded that plaintiff obviously experienced a worsening of his mental condition. Although neither treatment notes nor consultative evaluations present in this record[5] reflect a particular date or period when plaintiff's mental condition began to deteriorate and prevent him from engaging in employment, the administrative law judge nonetheless chose the same date as the state agency and found that plaintiff became disabled as of February 1, 2000. In making this finding, he referred to plaintiff's testimony that he stopped attending church one to two years earlier because he had problems with crowds and also to his testimony that he quit paying bills about the time he began getting his supplemental security income checks in February 2000 because his memory had gotten so bad.

Plaintiff objects to the administrative law judge's finding as to when his disability commenced asserting that a medical expert should have been consulted consistent with Social Security Ruling 83-20. This ruling provides that a determination as to how long a disease has existed at a disabling level "depends on an informed judgment" of the facts in a particular case. This judgment, however, "must have a legitimate medical basis." The ruling further indicates that, at the hearing, the administrative law judge "should" call on a medical advisor when the onset of disability

---

[5] As noted, none of the documents pertaining to the February 8, 2000 application are contained in the record and it is unclear, therefore, what the state agency relied on in granting plaintiff's disability as of February 1, 2000.

5

must be inferred.[6] As noted, the evidence here is ambiguous as to the date plaintiff became disabled and the administrative law judge did have to infer that date. He did not call on the services of a medical advisor, however. While he noted that the Prestera reports from March of 1997 to March of 2001 reflected that plaintiff did "reasonably well" on medication, the only evidence from after March 2001 was the consultative evaluation by Dr. Bernardo. Although she expresses concern about plaintiff's professed memory problems, which she suggests may prevent him from working, she does not give an opinion on when this may have occurred. Further, as plaintiff points out, this physician did not have all of the pertinent evidence to review, as it appears Dr. Khan's treatment notes were not provided to her, either at the time of evaluation or after, and this could have played a significant role in her decision. The Court concludes, therefore, that, consistent with Social Security Ruling 83-20 and the Court's decision in Bailey, the administrative law judge should have sought a medical advisor's opinion as to when plaintiff's disability commenced, and remand is necessary to obtain such opinion and reconsider this issue. The medical advisor should be given all the psychiatric/psychological evidence to review. The parties should also be given the opportunity to submit other relevant evidence.

**RECOMMENDATION**

---

[6] See also, Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995), which adds that, if the evidence of onset is "ambiguous," the ALJ "must" obtain a medical advisor's assistance in order to render the informed judgment required by the Ruling.

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: July 22, 2005

*[signature: Maurice S. Taylor, Jr.]*
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE